**E-FILED**
Wednesday, 03 September, 2008  10:30:01 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-30041 |
| | ) | |
| BENJAMIN GARCIA-GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant Benjamin Garcia-Garcia's Motion to Suppress Evidence (d/e 10).  The motion is fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to me for a Report and Recommendation.  Text Order, dated July 21, 2008. After carefully considering all of the submissions of the parties, hearing evidence on the matter, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion to Suppress be denied.

I.  BACKGROUND[1]

Defendant Garcia-Garcia is charged with illegal reentry after deportation and transportation of illegal aliens.  The matter came before

---

[1] **This Report and Recommendation is prepared without the benefit of a transcript. The Court apologizes for the delay in filing this Report and Recommendation.**

this Court for evidentiary hearing on the instant Motion on August 7, 2008.

The Government called one witness, Illinois State Police Trooper Dustin

Weiss.  After being admonished by the Court about the possible

consequences of any testimony he might give, Defendant Garcia-Garcia

testified.  The Defense produced no other evidence.

Based on the testimony heard in open court, Defendant's vehicle was

stopped at approximately 6:20 p.m. on April 15, 2008 by Trooper Weiss on

Interstate 55 near Springfield, Illinois.  Trooper Weiss testified that, prior to

initiating the traffic stop, he was sitting in his squad car, which was

stationary in the median on I-55 approximately one mile south of the I-55 /

I-72 split, facing the northbound traffic.  According to Weiss, at this point,

I-55 consists of three northbound lanes and three southbound lanes.  On

cross-examination, Weiss testified that he was parked in a turn-around on

the median which was even with the grade of the northbound lanes and

then tapered down to the southbound lanes.  According to Weiss, his

squad car was at the same level as the northbound lanes and was parked

at a right angle to the northbound lanes.

Weiss testified that he observed a Ford van traveling northbound in

the center lane.  The van was traveling slower than the other traffic and

slower than the posted 65 mph speed limit.  Weiss estimated that the van

was traveling at approximately 55 to 60 mph.  Trooper Weiss observed an

air freshener hanging from the van's rearview mirror.  This air freshener,

which is bright pink with some small white areas, was admitted into

evidence as Government Ex. A.  It is a violation of Illinois law for a person

to "drive a motor vehicle with any objects placed or suspended between the

driver and the front windshield, rear window, side wings or side windows

immediately adjacent to each side of the driver which materially obstructs

the driver's view."  625 ILCS 5/12-503(c).  Weiss determined that, because

of the air freshener, the van was in violation of this statute; therefore, he

pulled out behind the vehicle and initiated a traffic stop, based solely on the

windshield violation.  Weiss admitted on cross-examination that air

fresheners such as the one at issue here are fairly common and he has not

stopped every car that he sees with an air freshener hanging from the

rearview mirror.  When asked why he chose to pull Defendant's car over,

Weiss noted other indicators, including the vehicle's lower speed, the fact

that the driver did not look at the officer, and the fact that the driver

appeared stiff and rigid.

The Government presented four photographs of the van, taken after the traffic stop, as Government's Exhibits 1 through 4.  On cross-examination, Weiss admitted that he never had a direct head-on view of the van prior to initiating the traffic stop.  According to Weiss, he observed the air freshener from the angle portrayed in Government Ex. 3, but from the other side of the van.  Weiss estimated that Government Ex. 3 was taken from approximately five yards and testified that, at the closest point, he was approximately 25 yards away from the van when he observed the air freshener prior to initiating the traffic stop.  Weiss testified that he wears contact lenses and was wearing them at the time of the stop.  Weiss testified that, with the contacts, his vision is 20/15 in his right eye and 20/20 in his left.  According to Weiss, at the time of the stop, the weather was clear and the sun had not yet set.

Defendant testified that, immediately prior to the traffic stop, he was driving the van, with the air freshener hanging from the rearview mirror.  According to Defendant, the air freshener did not obstruct his view as he was driving.  Defendant testified that he was utilizing the van's cruise control, which he had set at 63 mph.  Defendant stated that he noticed the trooper's car in the median.  According to Defendant, the driver's side

window on the van was tinted, and it was up, i.e., closed, as Defendant

drove past the trooper.  Defendant testified that, after he passed the

trooper, the trooper pulled out behind him with his overhead lights on, and

Defendant pulled to the right side of the highway.  Defendant testified that

at no time did the trooper drive alongside the van.  Defendant also asserted

that, due to the van's tinted windows, someone standing outside the van

could not see into the vehicle's interior.  Defendant admitted, however, that,

in the photo marked Government Ex. 2, which was taken outside the van,

he could see into the van.  The Court's own examination of the photo

confirms this testimony.  Defendant further admitted that he was not in the

squad car at the time the trooper claimed he observed the violation, and

thus, Defendant does not know what the trooper could see at that point.

   After pulling the van over, Trooper Weiss approached on the

passenger side and made contact with the driver, whom the trooper

identified in Court as the Defendant.[2]  Upon request, the driver produced a

Mexican identification card.  Trooper Weiss asked the driver to come to his

squad car, which he did.  When the men returned to the squad car, Weiss

---

[2]The Court notes that, when Weiss approached the van, he also observed a
child's shoe, Government Ex. B, hanging from the rearview mirror.  Because it is clear
that Weiss did not see the shoe prior to stopping the van, it is irrelevant to the analysis
of the Motion to Suppress.

ran Defendant's name in his computer.  Weiss testified that he explained

the reason for the traffic stop to the Defendant.  According to Weiss,

Defendant spoke broken English.  Weiss testified that he made hand

gestures and a sniffing sound at which point the Defendant seemed to

understand the reason for the stop.  Weiss then issued Defendant a

warning citation for the obstructed windshield.  See Government Ex. 5.

Defendant testified that the trooper never explained the reason for the

warning citation.  It is undisputed, however, that Defendant signed the

warning citation.  At some point, Defendant indicated to Weiss that he and

his passengers were in the country illegally.  While the men were in the

squad car, Weiss contacted Immigration and Customs Enforcement

agents, who responded to the scene.  Defendant was arrested and

subsequently charged in the instant case.

## II.  ANALYSIS AND CONCLUSIONS OF LAW

Defendant asserts that Weiss stopped the Ford van without probable

cause and thus violated Defendant's Fourth Amendment rights.  As a

result, Defendant asks the Court to suppress the physical evidence seized

from his vehicle and any statements allegedly made by him following the

traffic stop.  Specifically, Defendant asserts that the traffic stop was invalid

because (1) from his vantage point in the median, Trooper Weiss could not have determined that a windshield obstruction violation occurred and (2) the air freshener did not materially obstruct Defendant's view as required for a violation of 625 ILCS 5/12-503(c).  As set forth below, Defendant's Motion should be denied.

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. Warrantless searches and seizures are "per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  The Government bears the burden of establishing by a preponderance of the evidence that an exception to the warrant requirement applies.  United States v. Basinski, 226 F.3d 829, 833 (7th Cir. 2000).  In the instant case, the Government asserts that probable cause existed to stop Defendant's vehicle based on Weiss' observation of the air freshener.

The decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred.  Whren v. United States, 517 U.S. 806, 810 (1996).  Defense counsel briefly argued that the stop was pretextual; however, as long as the trooper had probable cause to stop the vehicle, his subjective motives are irrelevant.  Id. at 813.   Moreover, it is well-established that probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." United States v. Cashman, 216 F.3d 582, 586 (7th Cir. 2000).

The record in the instant case supports the conclusion that Trooper Weiss had probable cause to believe that a violation of  625 ILCS 5/12-503(c) had been committed at the time he initiated the traffic stop of Defendant's vehicle.  Trooper Weiss testified that he observed the air freshener, Government Ex. A, obstructing Defendant's view as the van approached northbound on I-55.  Defendant argues that common sense dictates that, under the evidence presented, Weiss had only a fleeting view of the vehicle.  Defendant also points to the evidence that the vehicle had tinted windows, that the driver's side window was up, and that Weiss never had a straight on view of the van prior to stopping the vehicle.  The Court,

however, found Trooper Weiss to be extremely candid and deems his testimony highly credible.  The physical evidence also supports Weiss's testimony.  The air freshener, which has been entered into evidence, is tree-shaped and  approximately five inches by three inches at its largest points.  It is bright pink and white in color.  Additionally, it is clear from the photos of the van that it is possible to see through the front windshield into the interior of the vehicle; the air freshener is visible in Government's Exhibits 2, 3, and 4, all of which are photos taken outside the van.  Weiss expressly testified that he observed the air freshener from the angle portrayed in Government Ex. 3, but from the other side of the van.  Defendant's argument that Weiss could not have determined that a windshield obstruction violation occurred at the time he initiated the traffic stop is contrary to the record evidence.

Defendant further argues that the air freshener does not constitute a material obstruction as required under 625 ILCS 5/12-503(c).  In making this argument, Defendant relies on the recent Illinois Appellate Court case of People v. Cole.  874 N.E.2d 81 (Ill. App. 4th Dist. 2007).  In Cole, a police officer stopped Cole's vehicle based solely on the fact "that '[t]he vehicle had an obstructed vision.'"  Id. at 83.  When asked to identify the statutory

authority supporting the stop at a hearing on a motion to suppress, the

officer testified, "The regulation of the obstructed vision.  I cannot state

word-for-word, but I do know the exact law.  It is anything hanging between

the driver, hanging or suspended between the driver and the front

windshield."  Id.  The obstruction at issue was a single strand of opaque

beads, measuring 1/4 inch in diameter, which hung to the driver's eye level.

The Cole Court, after examining the beads in question, expressly rejected

the officer's characterization that the beads were larger than an air

freshener.  Id. at 90.  The Court found the stop unconstitutional because

the officer was acting under a mistaken interpretation of the law, and,

furthermore, because the facts known to the officer would not have

provided a reasonable officer, correctly interpreting the law, with

reasonable suspicion to initiate a traffic stop.  Id. at 88.  The Court

specifically noted that the officer failed to provide any testimony that would

support a finding of a material obstruction, but rather testified that the

beads were "an obstruction" and "hindered" Cole from observing other

drivers.  Id. at 89.

The instant case is distinguishable from Cole.  First, there is nothing

in the record to suggest that Trooper Weiss was operating under a

mistaken interpretation of the applicable law.  Furthermore, the air freshener at issue here is significantly larger than a single strand of beads measuring a mere 1/4 inch in diameter.  Indeed, another Illinois Appellate Court, in People v. Jackson, held that the presence of two tree or leafy-shaped air fresheners hanging from a rear view mirror provided reasonable suspicion that a violation of § 503(c) had occurred, despite the fact that the officer had only observed defendant's vehicle for two seconds prior to initiating the traffic stop.  Jackson, 780 N.E.2d 826 (Ill. App. 2d Dist. 2002).  Similarly, the Seventh Circuit, in United States v. Smith, held that an air freshener could be considered a material obstruction between the driver and the windshield in violation of § 503(c).  Smith, 80 F.3d 215, 219 (7th Cir.1996).  Both Jackson and Smith are more factually similar to the instant case than Cole.

Therefore, the record evidence establishes that Trooper Weiss observed the air freshener, Government Ex. A, as Defendant's vehicle traveled northbound on I-55.  This observation was sufficient to support a reasonable suspicion that  625 ILCS 5/12-503(c) was being violated.  Thus, the stop of the vehicle did not violate the Fourth Amendment, and Defendant's Motion to Suppress should be denied.

## III. CONCLUSION

For all the above reasons, I recommend that Defendant's Motion to Suppress Evidence (d/e 10) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).   Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER:    September 3, 2008

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE